United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

JORGE ARTURO ROJAS OSORIO,

Defendant.

Case No. 17-CR-00507-LHK

**ORDER GRANTING MOTION TO DISMISS INDICTMENT WITH PREJUDICE**

Re: Dkt. No. 32

Before the Court is Defendant Jorge Arturo Rojas-Osorio's motion to dismiss indictment, filed on November 2, 2018. ECF No. 32 ("Mot."). In the motion, Defendant seeks to dismiss his Indictment for illegal reentry on the ground that the removal on which the Indictment for illegal reentry was based was void because the IJ lacked jurisdiction over the removal proceedings. The government opposed on December 5, 2018. ECF No. 38 ("Opp'n"). Defendant replied on December 19, 2018. ECF No. 41 ("Reply"). Having considered the submissions of the parties, the relevant law, and the record in this case, Defendant's motion to dismiss the indictment is GRANTED with prejudice.

I.   **BACKGROUND**

   **A. Factual Background**

1

Defendant is citizen of Mexico who is also known under the aliases Juan Jose Rodrigo-Lara and Carlos Arturo Linares Rojas. On August 21, 1997, Defendant came into Immigration and Naturalization Services ("INS") custody from King County Sheriff's Department. ECF No. 38-1 ("Norris Decl.") at 2. On August 21, 1997, Defendant was served a Notice to Appear that alleged that Defendant was removable for his unlawful presence in the United States and for committing first degree theft in violation of RCW 9a.56.030(1)(a), a crime of moral turpitude in the state of Washington. *See* Mot., Exh. A ("Notice to Appear") at 1. The Notice to Appear provided no specific date or time for Defendant's hearing, but instead stated only:

> YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at: Seattle, Washington on a date to be calendared by the EOIR Office. Notice will be mailed to the address provided by the respondent.
> [O]n _____ at _____ to show why you should not be removed from the United States based on the charge(s) set forth above.

*See id.* Under the two blank lines, the words "(Date)" and "(Time)" were written in small lettering to indicate what information should be included on those two blank lines. *See id.*

In support of its opposition to the instant motion, the government attaches the declaration of Deportation Officer Courtney Norris. *See* Norris Decl. Officer Norris does not claim to have personal knowledge of Defendant's case, but rather says only that he "reviewed the Alien file of Juan Jose RODRIGO-Lara a.k.a. Jorge Arturo Rojas-Osorio." *Id.* at 2. Officer Norris asserts that on September 2, 1997, before a hearing was commenced, the Defendant was returned to the custody of King County Sheriff's Department to answer a warrant. *Id.*

There is a significant factual dispute between the parties as to what happened next. According to the government, on April 21, 2005, after serving a seven-year sentence for the first degree theft conviction, Defendant was returned to Immigration and Customs Enforcement ("ICE") custody. *Id.* Defendant takes issue with Officer Norris's assertion that Defendant served a seven-year sentence for the first degree theft conviction because, according to Defendant, the sentence imposed was only 90 days, not seven years. *See* Reply at 11 (citing Norris Decl., Exh. A at 7 ("Judgment and Sentence of the Washington Superior Court") (showing that the sentence

imposed was 90 days)).

On April 29, 2005, ICE notified the Executive Office of Immigration Review ("EOIR") in Seattle that Defendant was in ICE custody as was documented in Form I-830. Norris Decl. at 2; *see also* Norris Decl., Exh. A at 5 ("Notice to EOIR: Alien Address"). The EOIR court clerk and the ICE docket officer then set the date of Defendant's immigration hearing. Norris Decl. at 2.

According to Officer Norris, "[a] second notice with the exact date, place and time of [Defendant's] hearing *would have* been communicated to [Defendant] through" what is called a kite," or a "messaging system between persons incarcerated and detained docket case managers." *Id.* at 2–3 (emphasis added). Officer Norris elaborates on how a kite works in his declaration: "[t]he kit is typically a piece of 8 x 11 paper that includes a space for the inmate's name, alien number, housing location and question or concern. Generally, inmates ask about hearing dates, property or anticipate removal dates. Kites are communicated in the language that the inmate can understand." *Id.* at 2. However, Officer Norris does not assert that Defendant actually received a kite. Moreover, Defendant asserts in his declaration that "[a]fter serving my sentence and being immediately placed in the custody of immigration, I never received information about when and where my removal hearing would take place." ECF No. 42 ("Rojas-Osorio Decl.") ¶ 8.

Regardless, Defendant's removal hearing ultimately took place on May 9, 2005 via a video conference. The parties provided a CD containing the audio from Defendant's removal hearing. *See* Mot., Exh. B ("Removal Hearing"). The audio indicates that Immigration Judge ("IJ") Edward R. Kandler presided from Seattle, Washington, while Defendant was in the Northwest Detention Center located in Tacoma, Washington. *See id.* Defendant appeared without an attorney and was assisted by a Spanish translator. *See id.* Judge Kandler first advised Defendant that he had a right to a lawyer and asked Defendant if Defendant would like to proceed without a lawyer or if Defendant would like a continuance to obtain a lawyer. *See id.* Defendant responded that he would like to continue without a lawyer. *See id.*

In his instant motion, Defendant asserts, inter alia, that Judge Kandler did not meaningfully advise Defendant of his right to seek voluntary departure. *See* Mot. at 18–19.

The conversation as to the availability of voluntary departure during the removal proceeding occurred as follows. First, Judge Kandler asked counsel for the government whether there was any statutory bar to voluntary departure. *See* Removal Hearing. Government counsel responded that Defendant had a 1997 theft conviction. S*ee id.* Judge Kandler noted that the theft conviction was an adverse factor but added that "it happened over five years ago." *See id.* Government counsel then added that Defendant had a 1998 first degree robbery conviction. *Id.* Judge Kandler declined to grant voluntary departure based on the two prior convictions. *See id.* Judge Kandler made no further statements regarding voluntary departure. *See id.*

On May 9, 2005, Judge Kandler ordered Defendant removed from the United States. *See id.*; s*ee also* Mot., Exh. C ("Removal Order"). Defendant was advised that he had a right to appeal the decision, which Defendant agreed to waive. *See* Removal Hearing. On May 10, 2005, Defendant was removed. *See* Mot., Exh. D ("Warrant of Removal").

At some point, the Defendant returned to the United States. On October 13, 2006, a Notice of Intent/Decision to Reinstate Prior Order was issued ordering Defendant's removal based on the prior 2005 Removal Order. Mot., Exh. E ("2006 Reinstatement"). On January 31, 2011, a Notice of Intent/Decision to Reinstate Prior Order was issued, again based on the same 2005 Removal Order. Mot., Exh. F ("2011 Reinstatement"). The parties do not explain or cite to any materials that explain what happened in the intervening five years.

### B. Procedural History

On September 21, 2017, a grand jury in the Northern District of California returned an Indictment, charging Defendant with one count of a violation of 8 U.S.C. § 1326, Illegal Re-Entry Following Deportation. ECF No. 3. The Indictment stated Defendant, "previously having been excluded, deported and removed from the United States," was found in the United States "with the Attorney General of the United States and the Secretary for Homeland Security not having expressly consented to a re-application by the defendant for admission into the United States, in violation of Title 8, United States Code, Section 1326(a) and (b)(2)." *Id.*

On October 23, 2018, Defendant filed a motion to withdraw guilty plea. *See* ECF No. 29.

In the motion, Defendant argued that the United States Supreme Court's recent decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (Jun. 21, 2018), gave Defendant a new basis to collaterally attack Defendant's prior deportation, an element of Defendant's underlying 8 U.S.C. § 1236 prosecution, because Defendant's Notice to Appear in the underlying removal proceeding failed to specify the date and time of the hearing and because *Pereira* held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a).'" *See id.*; *see also Pereira*, 138 S. Ct. at 2113–14. On November 2, 2018, the government opposed the motion to withdraw guilty plea, ECF No. 33, and the Defendant replied on November 8, 2018, ECF No. 34. On November 20, 2018, the Court found that fair and just reasons existed for allowing Defendant to withdraw his guilty plea, and the Court granted Defendant's motion to withdraw guilty plea. ECF No. 36.

In the meantime, Defendant filed the instant motion to dismiss on November 2, 2018. *See* Mot. The government opposed on December 5, 2018. *See* Opp'n. The Court denied Defendant's motion for leave to file an oversized reply brief on December 18, 2018, ECF No. 40, and on December 19, 2018, Defendant replied. *See* Reply. On December 19, 2018, Defendant also filed a declaration in support of the Reply. *See* Rojas-Osorio Decl.

## II.     LEGAL STANDARD

### A.  Motion to Dismiss Indictment

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment on the ground that the indictment "fail[s] to state an offense." In considering a motion to dismiss an indictment, a court must accept the allegations in the indictment as true and "analyz[e] whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id.* A motion to dismiss an indictment can be determined before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.), *cert. denied*, 478 U.S. 1007 (1986).

United States District Court
Northern District of California

### B. Collateral Attack on a Deportation

"For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Raya–Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (internal quotation marks and citation omitted). "A defendant charged under § 1326 has a due process right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id.* (internal quotation marks and citation omitted).

To demonstrate that a prior deportation cannot serve as the basis of an indictment for illegal reentry, 8 U.S.C. § 1326(d) requires that a defendant "demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings 'improperly deprived [him] of the opportunity for judicial review'; and (3) the removal order was 'fundamentally unfair.'" *Raya–Vaca*, 771 F.3d at 1201 (quoting 8 U.S.C. § 1326(d)) (brackets in original). "To satisfy the third prong—that the order was fundamentally unfair—the defendant bears the burden of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *Id.* (internal quotation marks, citation, and brackets omitted).

## III. DISCUSSION

The Defendant argues that the Indictment must be dismissed, and that the removal was "fundamentally unfair" for two reasons. First, Defendant argues that his 2005 removal cannot be relied upon to support the instant prosecution because the IJ lacked jurisdiction to order Defendant's removal. *See* Mot. at 1. In particular, Defendant relies on the United States Supreme Court's recent decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), to argue that a Notice to Appear must contain a time and place for a removal hearing in order to vest the IJ with jurisdiction. *See id.* at 4–14. Because Defendant's Notice to Appear in the underlying removal proceeding did not contain time and date information, Defendant argues the IJ did not have jurisdiction to issue a removal order. *Id.* at 1. Second, Defendant argues that the IJ violated Defendant's due process rights when the IJ failed to advise Defendant of Defendant's eligibility

6

1   for voluntary departure or give Defendant the opportunity to present positive equities in favor of

2   that relief. *See id.*

3       Because the Court agrees with Defendant's first argument, the Court need not consider

4   Defendant's second argument. In the sections that follow, the Court addresses each requirement of

5   8 U.S.C. § 1326(d), beginning with the third prong under § 1326(d)(3)—that the entry of removal

6   was fundamentally unfair due to the IJ's lack of jurisdiction.

### A. Fundamental Unfairness Pursuant to 8 U.S.C. § 1326(d)(3)

8       Defendant contends that the charge against him—one count of a violation of 8 U.S.C.

9   § 1326, Illegal Re-Entry Following Deportation—is legally untenable because the 2005 removal

10  order on which it is based was invalid. *See* Mot. Specifically, Defendant contends that the Notice

11  to Appear initiating the removal proceeding was defective because it did not specify a time as

12  required by the language of the statute, 8 U.S.C. § 1229(a), and the United States Supreme Court's

13  reading of that statute in *Pereira. See id.* at 4–5. Defendant argues that without a valid Notice to

14  Appear, there was no charging document, and without a charging document, jurisdiction never

15  vested with the IJ who issued Defendant's 2005 removal order.

16      Therefore, the question before the Court is whether *Pereira* directs the Court to find that a

17  Notice to Appear that fails to provide a specific time or place is not a Notice to Appear at all, and

18  therefore cannot vest an IJ with jurisdiction. This question has yet to be answered by the United

19  States Supreme Court or the Ninth Circuit. The several courts to have addressed the question have

20  split, with some declining to apply *Pereira* to the instant question,[1] and others dismissing illegal

---

[1] *See, e.g.*, *United States v. Duarte*, No. 4:18CR3083, 2018 WL 6493090 (D. Neb. Nov. 30, 2018), *report and recommendation adopted*, No. 4:18CR3083, 2018 WL 6492750 (D. Neb. Dec. 10, 2018); *United States v. Hernandez-Lopez*, No. 5:18-CR-625(1)-DAE, 2018 WL 6313292 (W.D. Tex. Dec. 3, 2018); *United States v. Chavez*, No. 2:17-CR-40106-01-HLT, 2018 WL 6079513 (D. Kan. Nov. 21, 2018); *United States v. Mejia*, No. 18-CR-133-02018 WL 6050905 (D.N.H. Nov. 19, 2018); *United States v. Romero-Caceres*, No. 1:18-CR-354, 2018 WL 6059381, at *1 (E.D. Va. Nov. 19, 2018); *United States v. Ibarra-Rodriguez*, No. CR-18-190-M, 2018 WL 4608503 (W.D. Okla. Sept. 25, 2018); *United States v. Morales-Hernandez*, No. CR1800365TUCRCCJR, 2018 WL 4501052 (D. Ariz. Aug. 8, 2018), *report and recommendation rejected*, No. CR1800365TUCRCCJR, 2018 WL 4492377 (D. Ariz. Sept. 18, 2018). Additionally, in a petition for review, the Sixth Circuit recently rejected the petitioner's argument that *Pereira* applied to the jurisdictional context and held that "jurisdiction vests with the immigration court

7

reentry indictments on the grounds that the removal order was void because the Notice to Appear did not include time or place information as per *Pereira*.[2]

Several district courts within the Ninth Circuit to have addressed the question have recently found that where the Notice to Appear at issue did not include a time and place, jurisdiction did not vest with the IJ. *See, e.g., United States v. Erazo-Diaz*, No. CR-18-00311-001-TUC-RM (LAB), 2018 WL 6322168, at *4 (D. Ariz. Dec. 4, 2018) (finding that jurisdiction did not vest in the IJ where the Notice to Appear did not provide a time and place); *United States v. Soto-Mejia*, No. 2:18-cr-00150-RFB-NJK, 2018 WL 6435882, at *2 (D. Nev. Dec. 7, 2018) ("As the Notice to Appear in this case failed to include the time and location for the hearing, the immigration court did not have jurisdiction to issue its March 7 deportation order."); *United States v. Rodriguez-Rosa*, No. 3:18-cr-00079-MMD-WGC, 2018 WL 6635286, at *3 (D. Nev. Dec. 11, 2018) ("In light of *Pereira*, § 1229(a) requires that a notice to appear *always* includes time, date, and place information. The [Notice to Appear] here failed to comply with § 1229(a). The absence of date and time information in the [Notice to Appear] means the 2000 removal proceedings were not properly initiated, and therefore the immigration court was not vested with jurisdiction." (emphasis in original)); *United States v. Bastide-Hernandez*, 1:18-cr-2050-SAB, Dkt. 35 (E.D. Wash. Dec. 20, 2018) (same); *United States v. Quijada-Gomez*, 2:18-cr-00110-SAB, Dkt. 62 (E.D. Wash. Dec. 20, 2018) (same).

At the time of writing this instant Order, United States District Judge Charles R. Breyer of the United States District Court for the Northern District of California also considered the question

where . . . the mandatory information about the time of the hearing, *see* 8 U.S.C. § 1229(a), is provided in a Notice of Hearing issued after the NTA." *Hernandez-Perez v. Whitaker*, No. 18-3137, 2018 WL 6580478, at *5 (6th Cir. Dec. 14, 2018).

[2] *See, e.g., United States v. Virgen-Ponce*, 320 F. Supp. 3d 1164 (E.D. Wash. 2018); *United States v. Niebla-Ayala*, No. EP-18-CR-3067-KC, 2018 WL 6378019 (W.D. Tex. Dec. 5, 2018); *United States v. Tzul*, No. 4:18-CR-0521, 2018 WL 6613348 (S.D. Tex. Dec. 4, 2018); *United States v. Tornes-Xochitla*, No. 1:18-CR-337-RP, 2018 WL 6069173, at *1 (W.D. Tex. Nov. 20, 2018) (appeal filed); *United States v. Lopez-Urgel*, No. 1:18-CR-310-RP, 2018 WL 5984845 (W.D. Tex. Nov. 14, 2018) (appeal filed); *United States v. Ortiz*, No. 3:18-CR-00071-RWG, 2018 WL 6012390 (D.N.D. Nov. 7, 2018); *United States v. Valladares*, No. A-17-CR-00156-SS, 2018 WL 6629653 (W.D. Tex. Oct. 30, 2018); *United States v. Pedroza-Rocha*, No. EP-18-CR-1286-DB, 2018 WL 6629649 (W.D. Tex. Sept. 21, 2018).

presently before this Court. Judge Breyer found the Notice to Appear invalid under *Pereira*, held

that the IJ lacked jurisdiction to issue the removal order, and, as a result, granted a motion to

dismiss the defendant's indictment. *See United States v. Arteaga-Centeno*, CR 18-00332-CRB-1,

Dkt. 35 (N.D. Cal. Jan. 8, 2019).

For the reasons given below, this Court joins those courts that hold that the plain text of the

statute and reasoning of *Pereira* direct the Court to find that a Notice to Appear that fails to

specify a time or place for the hearings is not a Notice to Appear at all and therefore cannot vest an

IJ with jurisdiction. The Court first provides a brief explanation of the statute and regulations at

issue, as well as a summary of *Pereira*, before turning to its analysis on the jurisdiction question.

### 1. Statutory and Regulatory Framework and *Pereira*

The government's authority to order a noncitizen removed is derived exclusively from

statute. *See Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 882 (9th Cir. 2003). As the Ninth Circuit has

recognized, the Immigration and Nationality Act ("INA") "spells out with fine cut precision the

manner in which the Attorney General is to exercise his authority to order aliens removed." *Id.*

While the Board of immigration Appeals ("BIA") retains discretionary power, it is only "vested

with the authority to exercise the discretion granted by the Attorney General consistent with the

statutory requirements." *Id.* (citation omitted).

Federal regulations promulgated by the Attorney General establish the IJ's jurisdiction.

Under the relevant regulations, "[j]urisdiction vests, and proceedings before an Immigration Judge

commence, when a charging document is filed with the Immigration Court by the Service." 8

C.F.R. § 1003.14(a). A "[c]harging document means the written instrument which initiates a

proceeding before an Immigration Judge," and includes a "Notice to Appear." 8 C.F.R. § 1003.13.

Both the statute and the regulations define a "Notice to Appear." The statute governing

removal proceedings defines a Notice to Appear as "written notice" that specifies, among other

things, "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a). The

regulations that govern the IJ's jurisdiction state that a Notice to Appear "must also include" a list

of the same information as required by statute under 8 U.S.C. § 1229(a), except that the

United States District Court
Northern District of California

requirement of the "time and place" of the removal proceeding is omitted. *See* 8 C.F.R. § 1003.15(b). Additionally, 8 C.F.R. § 1003.18(b) provides that "[i]n removal proceedings pursuant to section 240 of the Act, the Service shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable. If that information is not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing."

Recently, the United States Supreme Court interpreted the definition of "Notice to Appear" in 8 U.S.C. § 1229(a) in the stop-time rule context. *See Pereira*, 138 S. Ct. 2105 at 2109–10. The United States Supreme Court held that a "putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule." *Id.* at 2113–14.

Pereira concerned a nonpermanent resident petitioner in removal proceedings who was seeking "cancellation of removal," pursuant to 8 U.S.C. § 1229b(b)(1). *Id.* at 2109–10. To be eligible for "cancellation of removal," the nonpermanent resident had to demonstrate, among other things, that he had been physically present in the United States for at least ten years. *Id.* at 2110 (citing 8 U.S.C. § 1229b(b)(1)(A)). Under the "stop-time rule," the service of a "notice to appear" stops the accrual of time for purposes of the physical presence requirement. *Id.* at 2110–11 (citing 8 U.S.C. § 1229b(d)(1)(A)). Pursuant to statute, a "notice to appear," requires "written notice," that specifies "the time and place at which the [removal] proceedings will be held." *Id.* (citing 8 U.S.C. § 1229(a)(1)(G)(i)). The issue before the United States Supreme Court was whether a "notice to appear" that did not specify either the time or place of the removal proceedings qualified as a valid "notice to appear" under § 1229(a) that triggered the "stop-time rule." *Id.* at 2109–10. The United States Supreme Court held that a "putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule." *Id.* at 2113–14. Justice Kennedy, concurring, noted that in so holding, the United States Supreme Court was abrogating

10

the decisions of at least six Court of Appeals that had concluded that notice without those details could trigger the "stop-time rule," including the Ninth Circuit's decision in *Moscoso-Castellanos*. *See id.* at 2120 (Kennedy, J., concurring) (citing *Moscoso-Castellanos v. Lynch*, 803 F.3d 1079, 1083 (9th Cir. 2015)).

### 2. The IJ's Jurisdiction

The Court agrees with the courts that have found that the United States Supreme Court's holding in *Pereira* is applicable and controlling in this case concerning the jurisdiction of the IJ in the underlying removal proceeding. In particular, the Court finds that a Notice to Appear that fails to specify a time or place for the hearings is not a Notice to Appear at all and therefore cannot vest an IJ with jurisdiction.

The plain language of the regulations governing the jurisdiction of the IJ provides that jurisdiction "vests" only "when a charging document is filed with the Immigration Court," 8 C.F.R. § 1003.14, and a "Notice to Appear," is such a "charging document," 8 C.F.R. § 1003.13. Relying upon *Pereira*, the Court finds that the definition of a "Notice to Appear" is controlled by statute (8 U.S.C. § 1229(a)) and not regulation (8 C.F.R. § 1003.15(b)), because in *Pereira*, the United States Supreme Court expressly rejected the BIA's regulation-based interpretation in favor of the plain language of the statute. *See* 138 S. Ct. at 2111–14. Finally, pursuant to *Pereira*, "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a).'" *Id.* at 2110. "The plain text, the statutory context, and common sense all lead inescapably and unambiguously to that conclusion." *Id.*

In opposition, the government argues: (1) *Pereira* was limited to the narrow context of the stop-time rule and does not apply to Defendant's case; (2) the Notice to Appear in this case complied with the regulatory requirements that define the IJ's jurisdiction and "Notice to Appear" and those regulations are entitled deference; (3) even if *Pereira* applies and the Notice to Appear was deficient, the notice of hearing or actual commencement of the removal proceeding "cured" the initial defect and vested jurisdiction in the IJ; and (4) even a defective, non-cured Notice to Appear does not preclude jurisdiction from vesting in the IJ. *See* Opp'n. Finally, the government

raises practical concerns about applying *Pereira* to the instant issue. The Court finds the government's arguments unpersuasive.

First, the Court disagrees with the government's narrow reading of *Pereira*. *See* Opp'n at 7–11. Although the United States Supreme Court in *Pereira* was concerned with the question of whether a Notice to Appear was sufficient to trigger the stop-time rule, its conclusion about the adequacy of a Notice to Appear was not so limited. *Pereira* held that the time and place requirement pursuant to § 1229(a) is "definitional." *Pereira*, 138 S. Ct. at 2116. "While the Supreme Court applied this definition to the determination of the applicability of the stop-time rule, the express language of this holding does not suggest any limitation on the Court's <u>definition</u> of what is and is not a 'Notice to Appear' under Section 1229(a) with respect to the requirement for the notice to contain a time and location." *Soto-Mejia*, 2018 WL 6435882, at *3 (emphasis in original). Indeed, the United States Supreme Court itself emphasized that "it is a normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Pereira*, 138 S. Ct. at 2115 (quoting *Taniguchi v. Lan Pacific Saipan, Ltd.*, 566 U.S. 560 (2012)). The Supreme Court also explicitly stated that "when the term 'notice to appear' is used elsewhere in the statutory section, *including as the trigger for the stop-time rule*, it carries with it the substantive time-and-place criteria required by § 1229(a)." *Id.* at 2116 (emphasis added).

Second, the government argues that the Court must give deference to the definition of "Notice to Appear" in the regulations. *See* Opp'n at 11–13 (citing 8 C.F.R. §§ 1003.15(b) and 1003.18). Specifically, the government highlights that unlike the statutory definition in 8 U.S.C. § 1229(a), the regulatory definition of Notice to Appear in 8 C.F.R. § 1003.15(b) does not require that a Notice to Appear include the time and place of the initial hearing. Additionally, the government cites 8 C.F.R. § 1003.18(b), which provides that time and place information need only be included "where practicable," and that, if time and place information "is not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of

12

hearing," as evidence that the regulations specifically contemplate instances in which a Notice to Appear will not contain the time and place. *See* Opp'n at 12–13.

The Court rejects the government's argument and finds that the regulations cannot override the plain meaning of the statute when the statute is unambiguous. In *Pereira*, the United States Supreme Court explained that Congress "supplied a clear and unambiguous answer" as to the requirements for a Notice to Appear under § 1229(a), and thus "the Court need not resort to *Chevron* deference." *Pereira*, 138 S. Ct. at 2113–14 (citing *Chevron v. USA Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.")).

Additionally, the *Pereira* court specifically addressed the regulation that states that "a 'notice to appear' served on a noncitizen need only provide 'the time, place and date of the initial removal hearing, where practicable." *Pereira*, 138 S. Ct. at 2111 (discussing 8 C.F.R. § 1003.18(b)). Per that regulation, the Department of Homeland Security ("DHS") had almost always served noncitizens with notices that failed to state the time, place, or date. *See id.* Prior to *Pereira*, the BIA found in *Matter of Camarillo*, 25 I. & N. Dec. 644 (2011), that such notices lacking time and place information still triggered the stop-time rule because the BIA reasoned that the statutory phrase "notice to appear 'under section [1229](a)'" in the stop-time rule "merely specifies the document that DHS must serve on the alien to trigger the 'stop-time' rule," but otherwise imposes no "substantive requirements" as to what information that document must include to trigger the stop-time rule." *Pereira*, 138 S. Ct. at 2111–12 (quoting *Matter of Camarillo*, 25 I. & N. at 647). The First Circuit accorded *Chevron* deference to the BIA's interpretation and held that the "BIA's interpretation of the stop-time rule was a permissible reading of the statute." *Id.* at 2112–13. However, the United States Supreme Court in *Pereira* specifically rejected application of the regulations and declined to provide deference to the BIA's interpretation of § 1229(a) because the Supreme Court found unambiguously that the "time-and place requirements mandated by § 1229(a)" impose "substantive" requirements. *Id.* at 2117–18

("[T]he statute makes clear that Congress fully intended to attach substantive significance to the requirement that noncitizens be given notice of at least the time and place of their removal proceedings."). Therefore, in light of Congress' clear language and the United States Supreme Court's explicit analysis of the issue in *Pereira*, the Court finds that the statute's unambiguous language in § 1229(a), not the regulations, guides the definition of the substantive requirements of a Notice to Appear.

In light of the above discussion, the Court must also reject the government's reliance on the BIA's post-*Pereira* decision in *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441 (2018). There, the BIA declined to extend *Pereira*'s holding to the Notice to Appear context. *See id.* However, the BIA's *Bermudez-Cota* decision relies on the "where practicable" language that the United States Supreme Court specifically rejected in *Pereira*.

Third, the government argues that the Defendant's notification via kite or participation in the removal proceedings "cured" the defect in the initial Notice to Appear. *See* Opp'n at 13–16. In particular, the government relies on the Ninth Circuit's decision in *Popa v. Holder*, 571 F.3d 890 (9th Cir. 2009), that was decided *before* the United States Supreme Court's decision in *Pereira*. In *Popa*, the Ninth Circuit upheld a so-called "two-step notice" procedure whereby "a Notice to Appear that does not include the date and time of an alien's deportation hearing, but that states that a date and time will be set later, is not defective so long as a notice of the hearing is in fact later sent to the alien." 571 F.3d at 895.

The Court disagrees with the government that *Popa* remains good law after *Pereira*. In *Popa*, the Ninth Circuit found that a Notice to Appear that omits time and place information is still, definitionally, a "Notice to Appear." *See id.* ("We hold a Notice to Appear that fails to include the date and time of an alien's deportation hearing, but that states that a date and time will be set later, is not defective so long as a notice of the hearing is in fact later sent to the alien."). *Pereira*, however, expressly rejected that notion when it stated "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a).'" *See* 138 S. Ct. at 2110; *see also id.* at 2116 ("In the dissent's view, a defective

United States District Court
Northern District of California

notice to appear is still a 'notice to appear' even if it is incomplete . . . . The statutory text proves otherwise.").

The Court similarly rejects the government's reliance on *Becker v. Montgomery*, 532 U.S. 757, 768 (2001), to support its position that actual notice can cure an underlying defect, *see* Opp'n at 14, because the United States Supreme Court expressly distinguished *Becker* in its decision in *Pereira. See* 138 S. Ct. at 2116–17 ("Moreover, the omission of time-and-place information is not, as the dissent asserts, some trivial, ministerial defect, akin to an unsigned notice of appeal. Failing to specify integral information like the time and place of removal proceedings unquestionably would 'deprive [the notice to appear] of its essential character.'" (citing *Becker*, 532 U.S. at 763)). Further, the Court rejects the government's reliance on *Edelman v. Lynchburg College,* 535 U.S. 106 (2002), and *Scarborough v. Principi*, 541 U.S. 401 (2004), which concern an Equal Employment Opportunity Commission regulation and the Equal Access to Justice Act, respectively, because both rely on *Becker* and therefore are equally inapposite to the instant case.

In light of *Pereira*, the Court agrees with the other district courts that have rejected the idea that subsequent notice could cure a deficient Notice to Appear and therefore vest an IJ with jurisdiction. Importantly, "[t]he immigration court's subsequent notices are not charging documents that confer jurisdiction over immigration proceedings." *Rodriguez-Rosa*, 2018 WL 6635286, at *4. Similarly, the Defendant's appearance at the removal hearing does not satisfy the "charging document" requirement to vest the IJ with jurisdiction. *See* 8 C.F.R. § 1003.13 Accordingly, because Defendant's Notice to Appear in the instant case did not specify the date and time, and because Defendant's subsequent appearance at the removal hearing could not cure the deficient Notice to Appear, jurisdiction did not vest in the immigration court pursuant to 8 C.F.R. § 1003.13, and the immigration court removal proceeding is void.

Fourth, the government argues that even a defective, non-cured Notice to Appear does not preclude jurisdiction from vesting in the IJ. Opp'n at 15–16. In support of this argument, the government cites to several *pre-Pereira* cases, including *Kohli v. Gonzales*, 473 F.3d 1061 (9th Cir. 2007), and *Lazaro v. Mukasey*, 527 F.3d 977 (9th Cir. 2008). The Court agrees with the

15

reasoning of Judge Breyer that "neither [of these cases] addresses a situation like this one in which a noncitizen was removed pursuant to a jurisdictionally-void [Notice to Appear]." *See Arteaga-Centeno*, CR 18-00332-CRB-1, Dkt. 35 at 7 (discussing that *Kohli* is inapposite because it "addressed the impact of a[ ] [Notice to Appear] that did not include a legible name and title of the officer who issued the [Notice to Appear], which is not a requirement under either the statue or regulation"); *see also id.* at 7–8 (distinguishing *Lazaro* on the basis that the Ninth Circuit found that the charging document satisfied "albeit minimally, § 1229(a)(1)(D)'s requirements" (quoting 527 F.3d at 980)). In neither *Kohli* nor *Lazaro*, "did the Ninth Circuit conclude that the underlying removal proceeding failed to comply with the statutory requirements of a[ ] [Notice to Appear] such that the immigration court lacked jurisdiction. . . . And so neither supports the Government's position that an invalid [Notice to Appear] may nevertheless support a valid deportation." *Id.* at 8.

Moreover, the government's reliance on *United States v. Cotton*, 535 U.S. 623, 630–31 (2002), and *United States v. Velasco-Medina,* 305 F.3d 845–46 (9th Cir. 2002), is misplaced because these cases relate to whether flaws in an *indictment* render a district court without jurisdiction to adjudicate a case. Neither case involves whether the IJ had jurisdiction over the removal proceedings. Therefore, the cases are inapposite. Because none of the government's cases are persuasive, the Court rejects the government's argument that a defective, non-cured Notice to Appear does not preclude jurisdiction from vesting in the IJ.

Finally, the government asserts that application of *Pereira* and the plain language of § 1229(a) to the instant issue would be disruptive. *See, e.g.*, Opp'n at 11, n.1 ("The disruptive potential of this argument is enormous . . . . Arguably, the number of affected cases is in the hundreds of thousands."). The Court declines to allow such concerns to prevent the Court from applying the plain language of the statute. Further, the *Pereira* Court acknowledged similar concerns. For instance, the *Pereira* Court explicitly recognized that "almost 100 percent" of "notices to appear omit the time and date of the proceeding over the last three years." 138 S. Ct. at 2111. In the face of this evidence, the United States Supreme Court nevertheless concluded that the statutory time and place requirement carried real importance. The Court emphasized, "the

omission of the time-and-place information is not, as the dissent asserts, some trivial, ministerial defect, akin to an unsigned notice of appeal. Failing to specify integral information like the time and place of removal proceedings unquestionably would 'deprive [the notice to appear] of its essential character." *Id.* at 2116–17 (citations omitted) (brackets in original).

Moreover, in *Pereira*, the majority also rejected other "practical considerations" as "meritless" and not "justify[ing] departure from the statute's clear text." *Id.* at 2118. For instance, the government had argued that "'the administrative realities of removal proceedings' render it difficult to guarantee each noncitizen a specific time, date, and place for his removal proceedings." *Id.* at 2118–19. But in response, the *Pereira* court pointed to the statute's provision in § 1229(a)(2) that vests with the government the power to change the time or place so long as it provides written notice specifying the new time or place. *Id.* at 2119 (citing 8 U.S.C. § 1229(a)(2)). "Nothing in our decision today inhibits the Government's ability to exercise that statutory authority *after* it has served a notice to appear *specifying the time and place* of the removal proceedings." *Id.* (emphasis added).

In sum, having found that *Pereira* applies and having rejected the government's arguments to the contrary, the Court applies the plain language of § 1229(a). "A putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a notice to appear under section 1229(a)." *Pereira*, 138 S. Ct. at 2113 (internal citations and quotations omitted). A deficient Notice to Appear does not constitute the appropriate charging document that vests the immigration court with jurisdiction. Because the Notice to Appear that Defendant received here lacked the necessary time information, the Notice to Appear was deficient, and therefore jurisdiction never vested with the immigration judge.

### 3. Due Process and Prejudice

The Court now analyzes the above findings in the context of 8 U.S.C. § 1326(d), which provides three prongs that a defendant must establish to successfully collaterally attack his prior removal order. "To satisfy the third prong—that the order was fundamentally unfair—the defendant bears the burden of establishing both that the deportation proceeding violated his due

process rights and that the violation caused prejudice." *Raya–Vaca*, 771 F.3d at 1201 (internal quotation marks, citation, and brackets omitted).

The Court finds that the 2005 removal order was fundamentally unfair under 8 U.S.C. § 1326(d)(3). First, without jurisdiction having vested in the immigration court, the 2005 removal order entered violated Defendant's due process rights. *See, e.g.*, *Rodriguez-Rosa*, 2018 WL 6635286, at *4 (finding fundamental unfairness where the immigration court did not have jurisdiction); *see also Erazo-Diaz*, 2018 WL 63222168, at *5 ("The Court agrees that the order of removal is fundamentally unfair under § 1326(d)(3). Because it was entered without jurisdiction, it was a violation of Defendant's due process rights.").

The government asserts in opposition that "no due process violation occurred because Defendant received actual notice of the time and date of his hearings as evidenced by the fact that he appeared and participated in his 2005 removal hearing." Opp'n at 16. The Court rejects this argument. "[I]f the order is void on its face for want of jurisdiction, it is the duty of this and every other court to disregard it." *Wilson v. Carr*, 41 F.2d 704, 706 (9th Cir. 1930). The Court rejects the government's attempt to construe Defendant's appearance at the removal proceeding as some sort of waiver. At issue here is "the domain of subject-matter jurisdiction—what the Supreme Court was speaking of when it stated that courts have a duty to ensure that their jurisdiction 'defined and limited by statute is not exceeded.'" *Pedroza-Rocha*, 2018 WL 6629649, at *4 (citing *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)). Subject matter jurisdiction cannot be waived. *See Magtanong v. Gonzales*, 494 F.3d 1190, 1191 (9th Cir. 2007). Therefore, regardless of whether Defendant actually appeared and participated in the hearing, Defendant's "hearing [was] void for lack of jurisdiction and his opportunity to be heard was not a fair one." *See Lopez-Urgel*, 2018 WL 5984845, at *5 (citing *Matter of Reitnauer*, 152 F.3d 341, 344 n.12 (5th Cir. 1998), *Mottley*, 211 U.S. at 152, and *Wilson*, 41 F.2d at 706).

Second, in light of the defective Notice to Appear, Defendant was prejudiced because he was "removed when he should not have been." *See United States v. Aguilera-Rosa*, 769 F.3d 626, 630, 636 (9th Cir. 2014); *see also United States v. Camacho-Lopez*, 540 F.3d 928, 930 (9th Cir.

18

2006) ("Camacho was removed when he should not have been and clearly suffered prejudice."). Having shown a due process violation and prejudice, the Court concludes that Defendant has met his burden under 8 U.S.C. § 1326(d)(3).

**B. Exhaustion and Judicial Review Pursuant to 8 U.S.C. §§ 1326(d)(1) and (2)**

Defendant contends that because of the due process violation he suffered, Defendant is not required to show that he exhausted administrative remedies or was denied judicial review pursuant to 8 U.S.C. §§ 1326(d)(1) and (2). Mot. at 15–16. The Court agrees.

Because the IJ lacked jurisdiction to issue the order of removal, the removal order was void. Defendant was therefore not required to exhaust his administrative remedies or seek judicial review. *See, e.g.*, *Lazaro v. Mukasey*, 527 F.3d 977, 980 (9th Cir. 2008) ("A petitioner is entitled to relief from a defective [Notice to Appear] if he 'show[s] that the Immigration Court lacked jurisdiction'" (citation omitted)); *United Farm Workers of Am., AFL-CIO v. Ariz. Agric. Emp't Relations Bd.*, 669 F.2d 1249, 1253 (9th Cir. 1982) ("Exhaustion of administrative remedies is not required where . . . the administrative proceedings themselves are void."); *Reese Sales Co. v. Hardin*, 458 F.2d 183, 187 (9th Cir. 1972) (explaining that exhaustion of administrative remedies is not required where "the agency lacks power or jurisdiction to proceed"); *see also, e.g.*, *Ortiz*, 2018 WL 6012390, at *3 ("The exhaustion and judicial review requirements are directed at examining decisions that may not comport with due process, and surely that standard requires an Immigration Judge's decision be anchored in an exercise of proper jurisdiction. Because Defendant's removal order was entered ultra vires, there was no legitimate order from which Defendant could perfect an appeal. As a result, Defendant need not satisfy section 1326(d)'s strict requirements because the Immigration Judge lacked jurisdiction from the outset." (citing *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987)); *Rodriguez-Rosa*, 2018 WL 6635286, at *6 ("[T]he immigration court's removal order was invalid for want of jurisdiction. Thus, any potential explanation of his rights Defendant received was in all likelihood wrong. Having been misinformed about his rights, Defendant could not have properly considered or intelligently waived them. Absent Defendant's valid waiver of his rights and in light of the misinformation,

19

1    Defendant needed not have exhausted his administrative remedies, or here establish that he was

2    deprived of judicial review."). Defendant thus need not satisfy the strict requirements of

3    § 1326(d)(1)-(2).

4         In sum, Defendant has shown that he is entitled to relief. Defendant's 2005 order of

5    removal is void because the IJ lacked jurisdiction to enter it. As the 2005 removal order is void,

6    the Court finds the government cannot establish a predicate element—the prior removal or

7    deportation of Defendant—of the sole offense in the Indictment. *See Raya–Vaca*, 771 F.3d at

8    1201. Accordingly, the Court GRANTS the motion to dismiss the indictment with prejudice.

9    **IV.    CONCLUSION**

10        For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss the

11   indictment with prejudice. The Indictment in this case is DISMISSED with prejudice.

12   **IT IS SO ORDERED.**

13

14   Dated: January 16, 2019

15                                        *Lucy H. Koh*

16                                        LUCY H. KOH
                                          United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 17-CR-00507-LHK
ORDER GRANTING MOTION TO DISMISS INDICTMENT WITH PREJUDICE