UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JORGE ARTURO ROJAS-OSORIO,<br><br>Defendant. | Case No. 17-CR-00507-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RECONSIDERATION; VACATING THE JANUARY 16, 2019 ORDER AND JUDGMENT; REOPENING THE CASE; AND GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT WITH PREJUDICE**<br><br>Re: Dkt. Nos. 32, 49, 50, 52 |

On January 16, 2019, the Court granted Defendant Jorge Arturo Rojas-Osorio's

("Defendant") motion to dismiss Defendant's 8 U.S.C. § 1326 indictment. Specifically, the Court,

relying on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), found that the immigration judge ("IJ")

lacked jurisdiction over Defendant's underlying 2005 removal proceedings because Defendant's

Notice to Appear for the removal hearing lacked date and time information. *See* ECF No. 49

("1/16/19 Order"). On January 28, 2019, the Ninth Circuit issued its ruling in *Karingithi v.

Whitaker*, 913 F.3d 1158 (9th Cir. 2019), in which the Ninth Circuit held that an IJ had jurisdiction

over removal proceedings even though the Notice to Appear lacked removal hearing date and time

1

Case No. 17-CR-00507-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RECONSIDERATION; VACATING
THE JANUARY 16, 2019 ORDER AND JUDGMENT; REOPENING THE CASE; AND GRANTING
DEFENDANT'S MOTION TO DISMISS THE INDICTMENT WITH PREJUDICE

information.

In light of this authority, the government filed a motion for leave to file a motion for reconsideration on January 31, 2019, ECF No. 51, which the Court granted, ECF No. 53. Before the Court is the government's motion for reconsideration. ECF No. 52 ("Mot. for Reconsid."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part the government's motion for reconsideration, ECF No. 54; VACATES the January 16, 2019 Order and the Judgment, ECF Nos. 49 & 50; REOPENS the case; and GRANTS the Defendant's motion to dismiss the indictment with prejudice on the second ground raised by Defendant in the motion to dismiss, ECF No. 32.

## I. BACKGROUND

### A. Factual Background

The Court repeats the relevant facts from the Court's January 16, 2019 Order dismissing Defendant's indictment. Defendant is citizen of Mexico who is also known under the aliases Juan Jose Rodrigo-Lara and Carlos Arturo Linares Rojas. On August 21, 1997, Defendant came into Immigration and Naturalization Services ("INS") custody from King County Sheriff's Department. ECF No. 38-1 ("Norris Decl.") at 2. On August 21, 1997, Defendant was served a Notice to Appear that alleged that Defendant was removable for his unlawful presence in the United States and for a Washington first degree theft conviction (RCW 9a.56.030(1)(a)), which the Notice to Appear alleged was a crime involving moral turpitude. *See* MTD, Exh. A ("Notice to Appear") at 1. The Notice to Appear provided no specific date or time for Defendant's removal hearing, but instead stated only:

> YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at: Seattle, Washington on a date to be calendared by the EOIR Office. Notice will be mailed to the address provided by the respondent.
> [O]n _____ at _____ to show why you should not be removed from the United States based on the charge(s) set forth above.

*See id.* Under the two blank lines, the words "(Date)" and "(Time)" were written in small lettering

2

1 | to indicate what information should be included on those two blank lines. *See id.*

2 | In support of its opposition to Defendant's motion to dismiss the indictment, the

3 | government attached the declaration of Deportation Officer Courtney Norris. *See* Norris Decl.

4 | Officer Norris does not claim to have personal knowledge of Defendant's case, but rather says

5 | only that he "reviewed the Alien file of Juan Jose RODRIGO-Lara a.k.a. Jorge Arturo Rojas-

6 | Osorio." *Id.* at 2. Officer Norris asserts that on September 2, 1997, before the removal hearing was

7 | commenced, the Defendant was returned to the custody of King County Sheriff's Department to

8 | answer a warrant. *Id.*

9 | There is a factual dispute between the parties as to what happened next. According to

10 | Deportation Officer Courtney Norris, on April 21, 2005, after serving a seven-year sentence for

11 | the first degree theft conviction, Defendant was returned to Immigration and Customs

12 | Enforcement ("ICE") custody. *Id.* Defendant takes issue with Officer Norris's assertion that

13 | Defendant served a seven-year sentence for the first degree theft conviction because the sentence

14 | imposed was only 90 days, not seven years. *See* ECF No. 41 ("MTD Reply") at 11. Indeed, the

15 | Judgment of the Washington Superior Court specifically shows that the sentence imposed was 90

16 | days, not seven years. *See* Norris Decl., Exh. A at 7 ("Judgment and Sentence of the Washington

17 | Superior Court") (showing that the sentence imposed was 90 days).

18 | On April 29, 2005, ICE notified the Executive Office of Immigration Review ("EOIR") in

19 | Seattle that Defendant was in ICE custody. Norris Decl. at 2; *see also* Norris Decl., Exh. A at 5

20 | ("Notice to EOIR: Alien Address"). The EOIR court clerk and the ICE docket officer then set the

21 | date of Defendant's removal hearing. Norris Decl. at 2.

22 | According to Officer Norris, "[a] second notice with the exact date, place and time of

23 | [Defendant's] hearing *would have* been communicated to [Defendant] through" what is called a

24 | kite," or a "messaging system between persons incarcerated and detained docket case managers."

25 | *Id.* at 2–3 (emphasis added). Officer Norris elaborates on how a kite works in his declaration:

26 | "[t]he kite is typically a piece of 8 x 11 paper that includes a space for the inmate's name, alien

number, housing location and question or concern. Generally, inmates ask about hearing dates, property or anticipate removal dates. Kites are communicated in the language that the inmate can understand." *Id.* at 2. However, Officer Norris does not assert that Defendant actually received a kite. Moreover, Defendant asserts in his declaration that "[a]fter serving my sentence and being immediately placed in the custody of immigration, I never received information about when and where my removal hearing would take place." ECF No. 42 ("Rojas-Osorio Decl.") ¶ 8.

Regardless, Defendant's removal hearing ultimately took place on May 9, 2005 via a video conference. The parties provided a CD containing the audio from Defendant's removal hearing. *See* ECF No. 32 ("MTD"), Exh. B ("Removal Hearing"). The audio indicates that IJ Edward R. Kandler presided from Seattle, Washington, while Defendant was in the Northwest Detention Center located in Tacoma, Washington. *See id.* Defendant appeared without an attorney and was assisted by a Spanish translator. *See id.* Judge Kandler first advised Defendant that he had a right to a lawyer and asked Defendant if Defendant would like to proceed without a lawyer or if Defendant would like a continuance to obtain a lawyer. *See id.* Defendant responded that he would like to continue without a lawyer. *See id.*

In his motion to dismiss the indictment, Defendant asserted, inter alia, that Judge Kandler did not meaningfully advise Defendant of his right to seek voluntary departure. *See* MTD at 18–19. The conversation as to the availability of voluntary departure during the removal proceeding occurred as follows. After finding Defendant removable and designating Mexico as the country for removal, Judge Kandler asked counsel for the government whether there was any bar to voluntary departure. *See* Removal Hearing. Government counsel responded that Defendant had a 1997 theft conviction. S*ee id.* Judge Kandler noted that the theft conviction was an adverse factor but added that "it happened over five years ago." *See id.* Government counsel then added that Defendant had a 1998 first degree robbery conviction. *Id.* Judge Kandler declined to grant voluntary departure based on the two prior convictions. *See id.* Judge Kandler made no further statements regarding voluntary departure. *See id.*

4

On May 9, 2005, Judge Kandler ordered Defendant removed from the United States. *See id.*; s*ee also* MTD, Exh. C ("Removal Order"). Defendant was advised that he had a right to appeal the decision, which Defendant agreed to waive. *See* Removal Hearing. On May 10, 2005, Defendant was removed. *See* MTD, Exh. D ("Warrant of Removal").

At some point, the Defendant returned to the United States. On October 13, 2006, a Notice of Intent/Decision to Reinstate Prior Order was issued ordering Defendant's removal based on the prior 2005 Removal Order. MTD, Exh. E ("2006 Reinstatement"). On January 31, 2011, a Notice of Intent/Decision to Reinstate Prior Order was issued, again based on the same 2005 Removal Order. MTD, Exh. F ("2011 Reinstatement"). The parties do not explain or cite to any materials that explain what happened in the intervening five years.

## B. Procedural History

On September 21, 2017, a grand jury in the Northern District of California returned an indictment, charging Defendant with one count of a violation of 8 U.S.C. § 1326, Illegal Re-Entry Following Deportation. ECF No. 3. The indictment stated Defendant, "previously having been excluded, deported and removed from the United States," was found in the United States "with the Attorney General of the United States and the Secretary for Homeland Security not having expressly consented to a re-application by the defendant for admission into the United States, in violation of Title 8, United States Code, Section 1326(a) and (b)(2)." *Id.*

On October 23, 2018, Defendant filed a motion to withdraw guilty plea. *See* ECF No. 29. In the motion, Defendant argued that the United States Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (Jun. 21, 2018), gave Defendant a new basis to collaterally attack Defendant's prior deportation, an element of Defendant's underlying 8 U.S.C. § 1326 prosecution, because Defendant's Notice to Appear in the underlying removal proceedings failed to specify the date and time of the removal hearing and because *Pereira* held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a).'" *See id.*; *see also Pereira*, 138 S. Ct. at 2113–14. On

United States District Court
Northern District of California

November 2, 2018, the government opposed the motion to withdraw guilty plea, ECF No. 33, and the Defendant replied on November 8, 2018, ECF No. 34. On November 20, 2018, the Court found that fair and just reasons existed for allowing Defendant to withdraw his guilty plea, and the Court granted Defendant's motion to withdraw guilty plea. ECF No. 36.

In the meantime, Defendant filed his motion to dismiss the indictment on November 2, 2018. *See* MTD. The government opposed on December 5, 2018. *See* ECF No. 38 ("MTD Opp'n"). The Court denied Defendant's motion for leave to file an oversized reply brief on December 18, 2018, ECF No. 40, and on December 19, 2018, Defendant replied. *See* MTD Reply. On December 19, 2018, Defendant also filed a declaration in support of the Reply. *See* Rojas-Osorio Decl.

On January 16, 2019, the Court granted Defendant's motion to dismiss the indictment because the Court, relying on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), found that the IJ lacked jurisdiction over Defendant's underlying 2005 removal proceeding because Defendant's Notice to Appear lacked removal hearing date and time information. *See* 1/16/19 Order. On January 16, 2019, the Court also entered judgment. *See* ECF No. 50.

On January 28, 2019, the Ninth Circuit issued its ruling in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), in which the Ninth Circuit held that an IJ had jurisdiction over removal proceedings even though the Notice to Appear lacked a date and time for the removal hearing.

On January 31, 2019, in light of the Ninth Circuit's decision in *Karingithi*, the government filed a motion for leave to file a motion for reconsideration of the Court's January 16, 2019 Order granting the motion to dismiss the indictment. ECF No. 51. On January 31, 2019, the Court granted the government's motion for leave to file a motion for reconsideration. ECF No. 53.

Before the Court is the government's motion for reconsideration of this Court's January 16, 2019 Order, that the government filed on January 31, 2019. *See* Mot. for Reconsid. Defendant opposed on February 7, 2019. ECF No. 54 ("Reconsid. Opp'n"). The government did not reply.

## II.    LEGAL STANDARD

### A.  Motion for Reconsideration

"[M]otions for reconsideration in criminal cases are governed by the rules that govern equivalent motions in civil proceedings." *United States v. Mendez*, 2008 WL 2561962, at *2 (C.D. Cal. June 25, 2008) (*citing United States v. Hector*, 368 F. Supp. 2d 1060, 1063 (C.D. Cal. 2005), *rev'd on other grounds*, 474 F.3d 1150 (9th Cir. 2007)). In ruling on motions for reconsideration in criminal cases, courts have relied on the standards governing Rule 59(e) and Rule 60(b) of the Federal Rules of Civil Procedure. *See id.* (applying the standard governing Rule 60(b)); *Hector*, 368 F. Supp. 2d at 1063 (analyzing a reconsideration motion as a Rule 59(e) motion). The district court generally applies the same analysis under both rules, and its decision is reviewed for abuse of discretion. *See Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004) (discussing Rule 60(b)); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir. 1991) (discussing Rule 59(e)).

Under Rule 59(e), "reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted); *see Snider v. Greater Nev. LLC*, 426 F. App'x 493, 495 (9th Cir. 2011). Under Rule 60(b), reconsideration is permitted upon a showing of: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). Relief under the sixth category "requires a finding of 'extraordinary circumstances.'" *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985)

(quoting *McConnell v. MEBA Med. & Benefits Plan*, 759 F.2d 1401, 1407 (9th Cir. 1985)).

**B. Motion to Dismiss Indictment**

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment on the ground that the indictment "fail[s] to state an offense." In considering a motion to dismiss an indictment, a court must accept the allegations in the indictment as true and "analyz[e] whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id.* A motion to dismiss an indictment can be determined before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.), *cert. denied*, 478 U.S. 1007 (1986).

**C. Collateral Attack on a Deportation**

"For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Raya–Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (internal quotation marks and citation omitted). "A defendant charged under § 1326 has a due process right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id.* (internal quotation marks and citation omitted). To demonstrate that a prior deportation cannot serve as the basis for an indictment for illegal reentry, 8 U.S.C. § 1326(d) requires that a defendant "demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings 'improperly deprived [him] of the opportunity for judicial review'; and (3) the removal order was 'fundamentally unfair.'" *Raya–Vaca*, 771 F.3d at 1201 (quoting 8 U.S.C. § 1326(d)) (brackets in original). "To satisfy the third prong—that the order was fundamentally unfair—the defendant bears the burden of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *Id.* (internal quotation

8

marks, citation, and brackets omitted).

III.    **DISCUSSION**

The Defendant argued in his motion to dismiss the indictment that Defendant's indictment must be dismissed for two reasons. First, Defendant argued that his 2005 removal cannot be relied upon to support the prosecution because the IJ lacked jurisdiction over Defendant's removal proceedings. *See* MTD at 1. In particular, Defendant relied on the United States Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), to argue that a Notice to Appear must contain date and time information for a removal hearing in order to vest the IJ with jurisdiction. *See id.* at 4–14. Because Defendant's Notice to Appear in the underlying removal proceeding did not contain removal hearing date and time information, Defendant argued the IJ did not have jurisdiction to issue a removal order. *Id.* at 1. Second, Defendant argued that the IJ violated Defendant's due process rights when the IJ failed to advise Defendant of Defendant's eligibility for pre-hearing or post-hearing voluntary departure or give Defendant the opportunity to present countervailing equities in favor of such relief. *See id.*

The Court's January 16, 2019 Order granted Defendant's motion to dismiss the indictment based on Defendant's first argument regarding *Pereira*, and therefore did not consider Defendant's second argument regarding voluntary departure. *See* 1/16/19 Order. The government now asks the Court to reconsider the Court's January 16, 2019 Order. Below, the Court reconsiders the Court's finding on the first argument regarding *Pereira* and agrees with the government. However, because the Court did not initially consider the Defendant's second argument regarding voluntary departure in the January 16, 2019 Order, the Court does so in the instant order.

**A.    Defendant's *Pereira*-Based Challenge Fails in Light of *Karingithi***

The government brings the instant motion for reconsideration because of the Ninth Circuit's January 28, 2019 decision in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), in which the Ninth Circuit held that an IJ had jurisdiction over removal proceedings even though the Notice to Appear lacked a date and time for the removal hearing. The Court agrees with the

9

government that the Ninth Circuit's decision in *Karingithi* compels a result contrary to the Court's January 16, 2019 Order.

The Ninth Circuit in *Karingithi* held as follows. First, the Immigration and Nationality Act ("INA") regulations and not the INA statute governed the requirements for a Notice to Appear and thus defined when the IJ's jurisdiction vests. *Id.* at 1158–59 (citing 8 C.F.R. § 1003.13, 1003.14(a)). Under the relevant regulations, "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). A "[c]harging document means the written instrument which initiates a proceeding before an Immigration Judge," and includes a "Notice to Appear." 8 C.F.R. § 1003.13. Both the INA statute and regulations define a "Notice to Appear." The statute at 8 U.S.C. § 1229(a)(1)(G)(i) provides that in removal proceedings, written notice referred to as a "Notice to Appear" shall be given to the alien specifying, among other things, the "time and place at which the proceedings will be held." The regulation at 8 C.F.R. § 1003.15 provides that a Notice to Appear "must also include" much of the same information as required by statute under 8 U.S.C. § 1229(a), except that the requirement of the "time and place" of the removal proceeding is omitted. The Ninth Circuit in *Karingithi* explained that because the regulations define when jurisdiction vests, the regulatory definition for "Notice to Appear" also necessarily governs when a Notice to Appear is sufficient for jurisdictional purposes. *Karingithi*, 913 F.3d at 1160. Therefore, the Ninth Circuit explained that pursuant to the regulations, a Notice to Appear need not include removal hearing date and time information to vest jurisdiction with the IJ. *Id.*

Second, the Ninth Circuit found Pereira inapplicable to the issue regarding an IJ's jurisdiction in removal proceedings. *See id.* at 1160–61. The Ninth Circuit explained that *Pereira* was limited to the narrow context of the stop-time rule. *Id.* Moreover, the Ninth Circuit was particularly persuaded by the fact that the stop-time rule at issue in Pereira *concerned* the stop-time statute (8 U.S.C. § 1229b(d)(1)) that specifically cross-referenced 8 U.S.C. § 1229(a), the statute defining a "Notice to Appear." *See id.* By contrast, the regulation regarding an IJ's

10

United States District Court
Northern District of California

jurisdiction in removal proceedings does not cross-reference 8 U.S.C. § 1229(a), the statute

defining a "Notice to Appear." As the Ninth Circuit stated, "[t]here is no 'glue' to bind § 1229(a)

and the jurisdictional regulations [at issue here]: the regulations do not reference § 1229(a), which

itself makes no mention of the IJ's jurisdiction." *Id.*

Therefore, applying the Ninth Circuit's reasoning in *Karingithi*, the Court finds that in the

instant case, Defendant's Notice to Appear that lacked removal hearing date and time information

was still sufficient to vest the IJ with jurisdiction over Defendant's removal proceedings. Thus,

Defendant's collateral attack on this ground fails.

Further, the Court notes that the instant Defendant had actual notice of his removal hearing

because he was in ICE custody and was brought to and present during his video conference

removal hearing. *See Karingithi*, 913 F.3d at 1159 ("We also note that the petitioner, Serah Njoki

Karingithi, had actual notice of the hearings."). Such actual notice defeats Defendant's arguments

regarding due process and prejudice. *See, e.g.*, *Farhoud v. I.N.S.*, 122 F.3d 794, 796 (9th Cir.

1997) ("Due process is satisfied if service is conducted in a manner 'reasonably calculated' to

ensure that notice reaches the alien."); *United States v. Bischsel*, 395 F.3d 1053, 1056 (9th Cir.

2005) ("[A]ctual notice is the best notice.").

Finally, in his opposition to the government's motion for reconsideration, Defendant raises

several arguments for why *Karingithi* was wrongly decided. *See* Reconsid. Opp'n at 3–16.

Defendant also suggests that the Court should stay his case pending resolution of the petition for

rehearing en banc in *Karingithi* and any subsequent petition for certiorari. *Id.* at 16–17. Although

the Ninth Circuit panel may ultimately prove incorrect in its determination, "once a federal circuit

court issues a decision, the district courts within that circuit are bound to follow it and have no

authority to await a ruling by the Supreme Court before applying the circuit court's decision as

binding authority." *Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000). Thus, the Court

declines Defendant's invitation to second guess the Ninth Circuit's *Karingithi* decision and

DENIES Defendant's request to stay his case pending the petition for rehearing en banc in

11

*Karingithi.*

Accordingly, the Court GRANTS in part[1] the government's motion to reconsider. In particular, the Court finds that the Court's January 16, 2019 Order that granted Defendant's motion to dismiss the indictment on the basis that the IJ did not have jurisdiction over Defendant's 2005 removal proceeding was incorrectly decided in light of the Ninth Circuit's decision in *Karingithi*. Therefore, the Court VACATES the January 16, 2019 Order and the Judgment, and REOPENS the case. However, the Court's January 16, 2019 Order did not consider the second argument in Defendant's motion to dismiss. The Court turns to that issue now.

### B. Defendant's § 1326 Indictment Must be Dismissed Because the IJ Failed to Meaningfully Advise Defendant of His Right to Seek Pre-Hearing Voluntary Departure

Defendant also argued in his motion to dismiss the indictment that his 2005 removal was fundamentally unfair because the IJ failed to advise Defendant of his eligibility for both pre-hearing and post-hearing voluntary departure and failed to provide Defendant the opportunity to present countervailing equities in favor of such relief. MTD at 17–23; MTD Reply at 12–15. As an initial matter, the government argues that the Court should not consider Defendant's pre-hearing and post-hearing voluntary departure arguments because Defendant's motion to withdraw guilty plea only discussed the *Pereira* argument and did not contain any voluntary departure argument. Mot. for Reconsid. at 4. However, the government has cited no authority, nor has the Court independently found any authority, holding that the Court cannot consider Defendant's voluntary departure arguments in the motion to dismiss. Therefore, the Court considers Defendant's arguments.

Second, Defendant effectively concedes that Defendant was not eligible for *post*-hearing voluntary departure. *See* MTD Reply at 13. Therefore, the Court does not consider the post-

---

[1] In its motion for reconsideration, the government also requests that the Court issue an order denying the motion to dismiss the indictment. Mot. for Reconsid. at 4. However, for the reasons given below, the Court grants the motion to dismiss the indictment on the second ground raised in Defendant's motion to dismiss.

12

hearing voluntary departure issue further.

However, as discussed below, the Court agrees with Defendant that the IJ failed to advise Defendant of his eligibility for *pre*-hearing voluntary departure and failed to provide Defendant the opportunity to present countervailing equities in favor of such relief. On this ground, the Court GRANTS Defendant's motion to dismiss the indictment, and DENIES the government's motion for reconsideration.

Below, the Court first discusses the due process violation then, whether Defendant was prejudiced. The Court third discusses the exhaustion and judicial review requirements. *See* 8 U.S.C. § 1326(d).

### 1. Due Process Violation

First, the Court agrees with Defendant that Defendant was deprived of due process during the 2005 removal hearing because he was not adequately informed of his right to apply for pre-hearing voluntary departure or given the opportunity to present countervailing equities in favor of such relief.

"[W]here the record contains an inference that the petitioner is eligible for relief from deportation, 'the IJ must advise the alien of this possibility and give him the opportunity to develop the issue.'" *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000); 8 C.F.R. § 240.11(a)(2). "The requirement that the IJ inform an alien of his or her ability to apply for relief from removal is mandatory, and failure to so inform the alien of his or her eligibility for relief from removal is a denial of due process that invalidates the underlying deportation proceeding." *United States v. Ubaldo–Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (internal quotation marks, alterations, and citation omitted); *see also Arrieta*, 224 F.3d at 1079 (explaining that the requirement to advise the alien of the possibility of relief and give him the opportunity to develop the issue is "mandatory."). The Ninth Circuit has held that this requirement specifically applies to voluntary departure, *see United States v. Arias–Ordonez*, 597 F.3d 972 (9th Cir. 2010) (finding due process violation when IJ failed to inform alien of eligibility for pre-hearing voluntary

13

departure relief); *United States v. Ortiz–Lopez*, 385 F.3d 1202 (9th Cir. 2004) (same), and that the advice must be "meaningful[ ]." *See United States v. Melendez–Castro*, 671 F.3d 950, 952 (9th Cir. 2012) (finding that the alien "was not meaningfully advised of his right to seek voluntary departure"). Indeed, in the Ninth Circuit, an IJ's failure to advise an alien regarding his right to pre-hearing voluntary departure is a due process error and constitutes a valid ground for a collateral attack of an underlying removal in a prosecution under 8 U.S.C. § 1326. *See, e.g.*, *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004) (failure to advise of pre-hearing voluntary departure is due process violation); *United States v. Nungaray-Rubalcaba*, 229 F. App'x 436 (9th Cir. 2007) (same); *United States v. Basulto-Pulido*, 219 F. App'x 717 (9th Cir. 2007) (same); *United States v. Alonza-Mendoza*, 239 F. App'x 330 (9th Cir. 2007) (same); *United States v. Lopez-Menera*, 542 F. Supp. 2d 1025 (N.D. Cal. 2008) (same).

Here, the Court agrees with Defendant that the IJ did not meaningfully advise Defendant of his right to seek pre-hearing voluntary departure or give Defendant the opportunity to present countervailing equities in favor of such relief. The conversation as to the availability of voluntary departure during the removal hearing occurred as follows. After finding Defendant removable and designating Mexico as the country for removal, Judge Kandler first asked counsel for the government whether there was any bar to voluntary departure. *See* Removal Hearing. Government counsel responded that Defendant had a 1997 theft conviction. *See id.* Judge Kandler noted that the theft conviction was an adverse factor but added that "it happened over five years ago." *See id.* Government counsel then added that Defendant had a 1998 first degree robbery conviction. *Id.* Judge Kandler declined to grant voluntary departure based on the two prior convictions. *See id.* Judge Kandler made no further statements regarding voluntary departure. *See id.*

Under Ninth Circuit law, the IJ's conversation with Defendant failed to meaningfully advise Defendant of his right to seek pre-hearing voluntary departure. In *Melendez-Castro*, for instance, the Ninth Circuit concluded that the alien was not meaningfully advised of his right to seek voluntary departure or given the opportunity to present countervailing equities in favor of

14

such relief when the IJ's discussion of voluntary departure consisted of the following:

> The only other application you may be eligible for is something called voluntary departure. Voluntary departure is available to anyone who has not been convicted of an aggravated felony. I can deny this in my discretion and, and [sic] even if you were to apply for voluntary departure I wouldn't grant it to you. I don't grant voluntary departure to anyone convicted of a crime in the United States, so I will be denying any other case of voluntary departure that you may make, but I need to go through that in the records, so that you understand.

671 F.3d at 953. The Ninth Circuit explained that "[a]lthough the IJ at first told Melendez–Castro that he was eligible for voluntary departure, almost in the same breath the IJ told him that he would not get the relief if he applied for it because he had a criminal record." *Id.* at 954. Further, "Melendez–Castro knew he had a criminal record, and heard the IJ state without qualification that he would not get this relief. It is no wonder that he did not formally apply." *Id.* Finally, "[t]he IJ never asked Melendez–Castro whether he wanted to apply." *Id.* "As a result, Melendez–Castro never had a genuine opportunity to apply for voluntary departure or to present evidence of the factors favoring this relief." *Id.*

The IJ's advisement in the instant Defendant's case is similar to the IJ's advisement in *Melendez-Castro* because the IJ in the instant case never asked the Defendant if he wanted to apply for pre-hearing voluntary departure, and therefore Defendant never had a genuine opportunity to apply for such relief or to present evidence of the countervailing equities favoring such relief. Even further, the IJ in the instant case never explained to Defendant the requirements for voluntary departure or how Defendant could qualify and establish his eligibility. Accordingly, because Defendant was not meaningfully advised of his right to pre-hearing voluntary departure and because Defendant never had the opportunity to apply for such relief and to present evidence favoring such relief, Defendant has demonstrated that his due process rights were violated. *See, e.g. Ortiz-Lopez*, 385 F.3d at 1204 (failure to advise of pre-hearing voluntary departure is due process violation).

### 2. Prejudice

A petitioner must show prejudice resulting from the due process violation in order to succeed on a motion to dismiss an indictment under 8 U.S.C. § 1326(d). *United States v. Muro–Inclan*, 249 F.3d 1180, 1184 (9th Cir.2001). In order to establish prejudice, an alien does not have to show that he would actually have been granted relief. *Arrieta*, 224 F.3d at 1079. "Instead, he must only show that he had a 'plausible' ground for relief from deportation." *Id.* To show plausible grounds for relief, a defendant need only establish "some evidentiary basis on which relief could have been granted." *United States v. Raya-Vaca*, 771 F.3d 1195, 1207 (9th Cir. 2014) (citing *United States v. Reyes-Bonilla*, 671 F.3d 1038, 1050 (9th Cir. 2012)).

As an initial matter, most of the government's opposition focuses on the fact that Defendant would not have qualified for *post*-hearing voluntary departure. *See* Opp'n at 20. However, the requirements for obtaining pre-hearing and post-hearing voluntary departure are different. *See In re Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999) (explaining that pre-hearing voluntary departure "requires much less from the alien"; for example, "an alien need not show that he has good moral character or that he has the financial means to depart the United States."). Thus, the government's arguments regarding post-hearing voluntary departure are not applicable to the question of whether or not Defendant has demonstrated prejudice with regards to pre-hearing voluntary departure.

*Pre*-hearing voluntary departure is available "at the alien's own expense," prior to the completion of a removal proceeding so long as the following statutory bars do not apply: (1) the alien is not deportable for an aggravated felony; (2) the alien has not engaged in terrorist activities; and (3) the "alien was [not] previously permitted to so depart after having been found inadmissible." 8 U.S.C. §§ 1229c(a)(1), 1227(a)(2)(A)(iii), 1227(a)(4)(B).

For the reasons discussed below, the Court finds that Defendant has shown that he had plausible grounds for *pre*-hearing voluntary departure relief from removal. The Court first discusses the three statutory bars and second discusses Defendant's countervailing equities.

### a. Statutory Bars

None of the statutory bars would have prevented Defendant from obtaining pre-hearing voluntary departure relief. First, there is no evidence in the record that Defendant engaged in terrorist activities or that Defendant had been previously permitted to depart after having been found admissible. *See* 8 U.S.C. §§ 1229c(a)(1), 1227(a)(2)(A)(iii), 1227(a)(4)(B).

Second, the government argues that Defendant would have been statutorily barred from voluntary departure relief because Defendant had been convicted of an aggravated felony. Opp'n at 20–21. Specifically, the government argues that Defendant's prior 1997 Washington state first degree theft conviction, which was listed on the Notice to Appear, resulted in a seven-year sentence and therefore constituted an aggravated felony. *See id.* The government does not specifically mention or address Defendant's 1998 Washington state first degree robbery conviction. *See id.* The Court discusses each conviction in turn.

First, with regards to the Defendant's 1997 Washington state first degree theft conviction, the government argues that the Notice to Appear made clear to the IJ that the Defendant was not eligible for pre-hearing voluntary departure and that "[i]t is not hard to gather how the IJ could come to such a finding given Defendant's record." Opp'n at 20. However, the Notice to Appear identified the 1997 Washington state first degree theft conviction as a crime of moral turpitude and not as an aggravated felony. *See* Notice to Appear. The Notice to Appear did not allege any aggravated felony conviction and did not allege that Defendant's removal was based upon an aggravated felony conviction. *See id.* Therefore, based on the face of the Notice to Appear, Defendant was not statutorily barred from pre-hearing voluntary departure relief and so he should have been advised of the availability of that relief.

Moreover, Defendant's 1997 Washington state first degree theft conviction does not constitute an aggravated felony. The government incorrectly contends, based on the declaration of Officer Norris, that Defendant's theft conviction resulted in a seven-year sentence. *See* Norris Decl. at 2. However, Officer Norris does not claim to have personal knowledge of Defendant's

17

case, and says only that he "reviewed the Alien file of Juan Jose RODRIGO-Lara a.k.a. Jorge Arturo Rojas-Osorio." *Id.* at 2. Moreover, Officer Norris does not attach any document showing that Defendant's theft conviction resulted in a seven-year sentence. Instead, the Judgment of the Washington Superior Court that is attached to Officer Norris's declaration specifically shows that the sentence imposed on Defendant was 90 days, not seven years. *See* Judgment and Sentence of the Washington Superior Court. A Washington state first degree theft conviction that resulted in a 90-day sentence is not an aggravated felony because it falls outside the aggravated felony definition requiring a sentence of at least one year for a crime of violence or a theft offense. *See* 8 U.S.C. § 1101(a)(43)(F), (G); *see also Alberto-Gonzalez v. I.N.S.*, 215 F.3d 906, 909 (9th Cir. 2000) (explaining that "[a]n aggravated felony is defined in relevant part as a 'theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year" and that the phrase "term of imprisonment" is used "to specifically refer to the actual sentence imposed.").

Second, the Court turns to Defendant's 1998 Washington state first degree robbery conviction. As an initial matter, Defendant's Notice to Appear did not mention the 1998 Washington state first degree robbery conviction, and the government's opposition to the instant motion to dismiss did not allege that Defendant's 1998 Washington state first degree robbery conviction constituted an aggravated felony. *See* Notice to Appear; Opp'n. In fact, the government's opposition to the instant motion to dismiss did not address the 1998 Washington state robbery conviction at all. *See* Opp'n. Moreover, the government did not dispute or address the extensive case law cited by Defendant to argue that Defendant's 1998 Washington state first degree robbery conviction does not constitute an aggravated felony. Mot. at 13; *United States v. Jonas*, No. 3:17-cr-00050-HZ, 2018 WL 1448555, at *3–4 (D. Or. Mar. 23, 2018) (finding that first-degree robbery under Washington law is categorically overbroad and indivisible and therefore not a crime of violence (a crime of violence for which the sentence is at least one year constitutes an aggravated felony)); *United States v. Packer*, 2:04-CR-0263-WFN-1, 2016 WL

18

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RECONSIDERATION; VACATING THE JANUARY 16, 2019 ORDER AND JUDGMENT; REOPENING THE CASE; AND GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT WITH PREJUDICE

1253870, at *4 (E.D. Wash. Mar. 8, 2016) (finding that the state of Washington's first degree robbery statute is categorically overbroad and indivisible, and therefore that the conviction cannot qualify as a violent felony under the ACCA); *see also, e.g.*, *Haffner v. United States*, No. C16-448-RAJ, 2016 WL 6897812 (W.D. Wash. Nov. 23, 2016) (finding that first-degree robbery under Washington law is not a crime of violence); *United States v. Navarro*, No. 2:10-CR-2104-RMP, 2016 WL 1253830, at *5–6 (E.D. Wash. Mar. 10, 2016) (same); *Lee v. United States*, No. C16-0949JLR, 2017 WL 387391, at *7–8 (W.D. Wash. Jan. 27, 2017) (same); *see also United States v. Villasenor-Botello*, 734 F. App'x 429 (9th Cir. 2018) (assuming without deciding that a 48-month sentence for a Washington state first degree robbery conviction was not an aggravated felony). Therefore, the parties do not allege that Defendant's 1998 Washington state first degree robbery conviction constitutes an aggravated felony or a statutory bar to Defendant plausibly receiving pre-hearing voluntary departure relief.

In sum, having found that neither of Defendant's prior convictions constitute an aggravated felony or a statutory bar, the Court concludes that none of the statutory bars would have precluded Defendant from plausibly obtaining pre-hearing voluntary departure relief.

### b. Countervailing Equities

Next, the Court finds that Defendant has identified countervailing equities that would have weighed in favor of granting pre-hearing voluntary departure relief. *See In re Thomas*, 21 I. & N. Dec. 20, 23 (BIA 1995) (explaining that IJs may also consider "countervailing equities such as long residence here, close family ties in the United States, or humanitarian needs."). For instance, Defendant has two children, born in 1996 and 1997, who are United States citizens. Rojas-Osorio Decl. ¶ 2. Defendant's partner and the mother of his children also lived in the United States. *Id.* As of May 2005, Defendant had lived in the United States for nine years. *Id.* He had worked in the United States as a housecleaner since he arrived in 1996. *Id.* Defendant's family lived in the Seattle, Washington area and maintained regular contact with him while he was in custody. *Id.* ¶ 3. These equities present significant humanitarian and public interest considerations that establish

19

some plausible ground for relief from deportation. *See, e.g.*, *Raya-Vaca*, 771 F.3d at 1207 (finding that "there is a 'compelling humanitarian interest in keeping families united,'" and that the humanitarian and public interest equities weighed in favor of granting defendant relief when his partner, their children, and his family lived in the United States).

Moreover, the record reflects that Defendant would have likely sought to voluntarily depart immediately had the IJ explained the voluntary removal process to him. Rojas-Osorio Decl. ¶ 7; *see, e.g.*, *United States v. Rodriguez-Arroyo*, 467 F. App'x 746, 747 (9th Cir. 2012) ("[Defendant] did not say that he was not willing to depart voluntarily immediately, nor is there any reason to think that he would not have done so had the IJ explained the voluntary removal process to him."). Finally, Defendant would have been able to pay for his flight with assistance from his partner if he had been granted pre-hearing voluntary departure. Rojas-Osorio Decl. ¶¶ 6–7.

Finally, the Ninth Circuit and the Board of Immigration Appeals ("BIA") have frequently concluded that the countervailing equities that Defendant has demonstrated, such as long residence, close family ties in the United States, or humanitarian needs, weigh in favor of pre-hearing voluntary departure relief, even where a defendant had a similar or even worse criminal history than the instant Defendant. *See, e.g.*, *Vassallo-Martinez*, 360 F. App'x 731 (9th Cir. 2009) (collecting cases where the BIA has affirmed the grant of voluntary departure relief or remanded for the IJ to consider voluntary departure relief to aliens with criminal histories, including in cases where the alien's criminal history included "six criminal convictions including battery, drunkenness, and driving under the influence"; cases concerning aliens with criminal histories of assault; cases concerning aliens with criminal histories of driving under the influence; and cases concerning aliens with criminal histories of possession of a controlled substance)[2]; *Ubaldo–*

---

[2] *See also, e.g.*, *In re Gonzales–Figeroa*, A29013696, 2006 WL 729784 (BIA Feb. 10, 2006) (affirming grant of voluntary departure where petitioner had four convictions for assault, one conviction for resisting arrest, and numerous arrests); *In re Pineda–Castellanos*, A77212443, 2005 WL 3833024 (BIA Nov. 16, 2005) (affirming grant of voluntary departure where criminal history included six criminal convictions including battery, drunkenness, and driving under the influence); *In re Villalonga Mante*, A44809425, 2007 WL 1676929 (BIA May 18, 2007) (remanding to IJ to

20

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RECONSIDERATION; VACATING THE JANUARY 16, 2019 ORDER AND JUDGMENT; REOPENING THE CASE; AND GRANTING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT WITH PREJUDICE

*Figueroa*, 364 F.3d at 1046, 1050–51 (finding defendant had plausible grounds to receive voluntary departure despite attempted burglary conviction); *United States v. Alcazar-Bustos*, 382 F. App'x 568 (9th Cir. 2010) (finding prejudice because the countervailing equities weighed in favor of relief despite defendant's two convictions for firearm possession, "associations with gang members, prior drug use, and sporadic work history," and explaining that the requirements for pre-hearing voluntary departure are much less stringent than other forms of relief); *United States v. Pallares-Galan*, 359 F.3d 1088 (9th Cir. 2004) (finding that it was plausible that the countervailing equities would outweigh defendant's criminal history, which included a conviction for the sexual abuse of a minor).

In sum, the Court finds that Defendant has established "some evidentiary basis on which relief could have been granted." *Raya-Vaca*, 771 F.3d at 1207. Accordingly, the Defendant has satisfied the prejudice prong.

### 3. Exhaustion and Judicial Review

Finally, the Ninth Circuit has found a defendant exempted from the exhaustion and judicial review requirements in § 1326(d) when the "IJ did not inform him that he was eligible for relief from [removal]." *Ortiz-Lopez*, 385 F.3d at 1204 n.2 (citing *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1049 (9th Cir. 2004)). In *Ortiz-Lopez*, for instance, the Ninth Circuit explained that Defendant was exempt from the exhaustion and judicial review requirements when the IJ failed to meaningfully advise Defendant of his right to seek pre-hearing voluntary departure. *Id.* at 1204. Specifically, the Ninth Circuit in *Ortiz-Lopez* explained that "[w]aiver of appeal must be

---

weigh merits of voluntary departure where petitioner was convicted of sexual battery); *In re Guillermo Ramirez*, A90797718, 2005 WL 698425 (BIA Mar. 8, 2005) (remanding to IJ to consider voluntary departure where petitioner committed robbery, identity theft, use of false name, and was arrested for DUI); *In re Hernandez–Barreto*, A92297631, 2004 WL 2943517 (BIA Oct. 29, 2004) (remanding case to IJ to weigh merits of voluntary departure where petitioner was convicted for domestic violence, possession of controlled substance, and DUI); *In re Reyes–Jimenez*, A97341646, 2004 WL 2418597 (BIA Oct. 4, 2004) (remanding to IJ to allow petitioner to apply for voluntary departure where petitioner was convicted of DUI, burglary, and disorderly conduct).

21

considered and intelligent, and '[w]e do not consider an alien's waiver of his right to appeal his deportation order to be considered and intelligent when the record contains an inference that the petitioner is eligible for relief from deportation, but the [IJ] fails to advise the alien of this possibility and give him the opportunity to develop the issue.' *Id.* at 1204 n.2 (citing *Ubaldo-Figueroa*, 364 F.3d at 1049). In that case, the Ninth Circuit further explained that "Ortiz-Lopez would have been deprived of the right to judicial review, because 'an alien who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right.'" *Id.* (citing *Arrieta*, 224 F.3d at 1079 (finding a deprivation of judicial review where an alien was not informed of the right to seek relief from deportation)).

In the instant case, because the IJ failed to meaningfully advise Defendant of his right to pre-hearing voluntary departure relief, Defendant's appeal waiver was similarly not considered and intelligent, and therefore, is excused. *See, e.g.*, *Rodriguez-Arroyo*, 467 F. App'x at 747 (finding in case where Defendant was not meaningfully advised of right to seek pre-hearing voluntary departure and never had opportunity to apply for voluntary departure or to present evidence of the countervailing equities favoring that relief, that defendant "was deprived of due process during the 2005 deportation hearing and his waiver of his right to appeal was not 'considered and intelligent'"); *Lopez-Menera*, 542 F. Supp. 2d at 1027–28 (A waiver is not "considered and intelligent" when "'the record contains an inference that the petitioner is eligible for relief from deportation,'" but the IJ fails to "'advise the alien of this possibility and give him the opportunity to develop the issue.'"); *Basulto-Pulido*, 219 F. App'x at 719 (same).

Accordingly, because the IJ's failure to inform Defendant of his eligibility for pre-hearing voluntary departure and failure to give Defendant a genuine opportunity to present his countervailing equities violated Defendant's due process rights, and because this violation caused Defendant prejudice, the underlying order of removal cannot constitute an element of Defendant's § 1326 offense. Therefore, the Court GRANTS Defendant's motion to dismiss the indictment on this ground. The Court therefore DENIES in part the government's motion for reconsideration to

the extent the government requests the Court to reject Defendant's voluntary departure arguments and deny the motion to dismiss the indictment.

## IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part the government's motion for reconsideration, VACATES the January 16, 2019 Order and the Judgment, REOPENS the case, and GRANTS the Defendant's motion to dismiss the indictment with prejudice.

**IT IS SO ORDERED.**

Dated: April 5, 2019

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

United States District Court
Northern District of California